UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LONZO LEE, )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>COUNSELORS, *et al.* )<br>)<br>      Defendants. ) | CAUSE NO.  3:02-CV-0737 RM |

<u>REPORT AND RECOMMENDATION</u>

Lonzo Lee brought this action under 42 U.S.C. § 1983 alleging the violation of federally protected rights while he was confined at the Miami Correctional Facility ("MCF"). This court's screening order of April 4, 2003, granted Mr. Lee leave to proceed on his excessive use of force and denial of access to the courts claims. On January 23, 2004, the court granted the defendants' motion for summary judgment in part but denied summary judgment to defendant Destin McCord on Mr. Lee's excessive use of force claim.

This case was referred to the undersigned magistrate judge for the disposition of all dispositive and non-dispositive matters on December 21, 2004, pursuant to 28 U.S.C. § 636(b)(1)(B). This court held an evidentiary hearing in this matter on January 26, 2005. The court now enters its findings of fact and conclusions of law in accordance with FED. R. CIV. P. 52.

### **I. FINDINGS OF FACT**

Mr. Lee testified that on July 12, 2001, officers came to his cell to escort him to be screened on a conduct report. Mr. Lee did not wish to be screened and refused to come out of his cell. A cell extraction team entered his cell and subdued and handcuffed him. Mr. Lee states that after he was handcuffed, Sergeant Dustin

McCord beat his head and twisted his arms. A nurse later gave him a "butterfly stitch" for his left wrist and he still has a small scar. Mr. Lee admitted that when the cell extraction team came to his cell, he refused to cuff up. Instead, he tried to argue with the team leader about why he was being moved to another cell.

Sgt. McCord testified that he was a member of the team that removed Mr. Lee from his cell after he refused to come out. He testified that five members of a cell extraction team enter a cell to subdue a recalcitrant inmate. Each team member has a specific assignment. The number one man enters the cell first, pins the inmate, and secures his head. The number two man secures the inmate's right arm, the number three man secures his left arm, the number four man secures his right leg, and the number five man secures his left leg. The two and three men are responsible for handcuffing the inmate after he has been subdued. Sgt. McCord testified that he was the number four man on this extraction team, that he secured Mr. Lee's right leg, that he did not touch Mr. Lee's head or arms, and that he did not use excessive force.

Two other members of the cell extraction team, Terry Moore and Ryan Riendau, also testified. Their testimony was consistent with that of Sgt. McCord. Officer Moore testified that he entered the cell first, pinned Mr. Lee, and secured his head. Officer Riendau testified that he was responsible for restraining Mr. Lee's right arm. Both officers testified that Mr. Lee resisted them, that the cell extraction team only used the force necessary to immobilize Mr. Lee, and that Sgt. McCord held one of Mr. Lee's legs and did not use excessive force on Mr. Lee.

The parties agree that the cell extraction was videotaped pursuant to Indiana Department of Correction policy. Mr. Lee attempted to obtain a copy of the

2

tape but was told that it is no longer available. Christopher Johnson, the MCF litigation liaison, testified that these videotapes are kept only for a period of time and then are reused. Videotapes of these sorts of events are of great assistance to the court, and it is unfortunate that the videotape of this incident is unavailable.

The court finds that MCF officials sent the cell extraction team to Mr. Lee's cell because he refused an order to come out of his cell. After the extraction team arrived at his cell, Mr. Lee continued to refuse to cuff up and be moved; rather he argued with the team leader about whether he should be moved to another cell. When the extraction team finally entered his cell, Mr. Lee resisted them. The court finds the testimony of Sgt. McCord and Officers Moore, and Ryan to be more credible than Mr. Lee's testimony. The court credits the testimony of Sgt. McCord and Officers Moore, and Ryan that Sgt. McCord did not use excessive force during this cell extraction and that he never touched Mr. Lee's head or arms.

## II. CONCLUSIONS OF LAW

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991). A correctional officer's use of physical force against an inmate may give rise to an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1 (1992); Whitley v. Albers, 475 U.S. 312 (1986). In evaluating whether prison officials violated the Eighth Amendment, the court is to consider factors such as the need for the application of force, the

relationship between the need and the amount of force used, and the extent of injury inflicted. Whitley, 475 U.S. at 321. "Not every push and shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Hudson v. McMillian, 503 U.S. at 9, quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom.* Johnson v. Johnson, 414 U.S. 1033 (1973).

> Where a prison security measure is undertaken to resolve a disturbance . . . the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. . . . such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.
>
> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that

4

> neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted).

Mr. Lee refused an order to come out of his cell and after the extraction team arrived at his cell, he continued to refuse to cuff up and be moved; rather he argued with the team leader about whether he should be moved to another cell. Accordingly, the court concludes that the decision to send the cell extraction team into Mr. Lee's cell was justified under the standards outlined in Hudson v. McMillian and Whitley v. Albers as a reasonable use of force to maintain or regain control over Mr. Lee and was a good faith effort to maintain or restore discipline. Mr. Lee was not entitled to refuse the order to move to another cell or the order to cuff up so he could be removed from his cell.

When the cell extraction team entered Mr. Lee's cell, he resisted the extraction team members, justifying the use of force necessary to subdue him. The officers, including Sgt. McCord, used only the force necessary to subdue and restrain Mr. Lee. Accordingly, any incidental harm inflicted on Mr. Lee during the cell extraction does not violate the Eighth Amendment.

### III. CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that the plaintiff, Lonzo Lee, take nothing by his complaint, that final judgment be entered in favor of defendant Destin McCord, and that judgment also be entered in favor of the defendants previously dismissed by the court's orders of April 10, 2003, and January 23, 2004.

**NOTICE IS HEREBY GIVEN** that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  FED. R. CIV. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Lerro v. Quaker Oats Co.</u>, 84 F.3d 239 (7th Cir. 1996); <u>Lockert v. Faulkner</u>, 843 F.2d 1015 (7th Cir. 1988); <u>Video Views, Inc. v. Studio 21 Ltd.</u>, 797 F.2d 538 (7th Cir. 1986).

**SO ORDERED** this 18th day of March, 2005.


<u>s/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge